IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

ALICIA Keating, Pro Se
Michelle Keating, Pro Se

    Plaintiff(s)                  CIVIL ACTION
        v.                      NO.

PENTUCKET REGIONAL SCHOOL DISTRICT
PENTUCKET REGIONAL SCHOOL COMMITTEE
THE BUREAU OF SPECIAL EDUCATION APPEALS
DIVISION OF ADMINISTRATIVE LAW APPEALS,
DIVISION OF LOCAL SERVICES, DEPARTMENT OF REVENUE
THE DEPARTMENT OF ELEMENTARY & SECONDARY
EDUCATION, THE BOARD OF EDUCATION &
THE COMMONWEALTH OF MASSACHUSETTS

    Defendant(s)

## COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    This action is brought under All-Writs Act (AWA), 28 U.S.C. § 1651(a), an

exception to the Anti-Injunction Act [28 § USC 2283], Federal Question, [28

USC § 1331], Civil Action for Deprivation of Rights Under Color of Law [42

USC § 1983], Civil Rights and Elective Franchise [28 USC § 1343] The

Individuals with Disabilities Education Act (IDEIA) [20 U.S.C. §§ 1400 et

seq.], the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et

seq.], Title V of the Rehabilitation Act of 1973 [791 et. seq.], and Section 504

of the Rehabilitation Act of 1973, [29 U.S.C. § 794 ct seq.] The Family

Educational Rights and Privacy [20 U.S.C. 1232g] Administrative Procedure

Act, Records Maintained on Individuals [5 USC § 552a] Fraud and Violations

of the 4th Amendment and 14th Amendment of the United States Constitution

and Constitutionality of MGL c. 71B §2A, MGLc30A §§ 2, 12, Ch. 131 of the Acts of 2010.

## II.    **JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction over this action pursuant to All-Writs Act (AWA), 28 U.S.C. § 1651(a), and 42 USC § 1983; 28 U.S.C. §§ 2201, 2202, 1331, 1343; 20 U.S.C. 1400 et. seq. Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiffs reside within Essex County, Massachusetts, where Defendant School District is located, and where the Plaintiff's cause of action arose.

## III.    **III. PARTIES**[1]

2.    Plaintiff Alicia Keating[2] is and was at all relevant times a resident of Groveland, Massachusetts.

3.    Plaintiff Michelle Keating is and was at all relevant times a resident of Groveland, Massachusetts and the Mother and sole legal custodian of Alicia Keating until her 18th birthday on July 25, 2012.

4.    Defendant Pentucket Regional School District is an "improvement district" of the Commonwealth of Massachusetts. Pentucket Regional School District aka "Pentucket Public Schools" in all Notices of Hearing by the BSEA.

---

[1] There appears to be several different definitions in Massachusetts Law defining entities. For example pursuant to Chapter 131 of the Acts of 2010 which defines "Agency", as a commonwealth authority, board, bureau, commission, department, division, executive office, institution, institution of higher education, the secretary of state, the attorney general, the state treasurer, the state auditor, the administrative office of the trial courts, trial court departments, the supreme judicial court, the appeals court, the governor's office, lieutenant governor's office, the governor's council, the house of representatives and the senate.

[2] Another example of conflicting definitions the statutory age of Majority in Massachusetts is 18 (M.G.L. Ch. 231, §85P), however 101 CMR 17 Unified Planning Teams in the Executive Office of Health and Human Services defines a Child as "a person under the age of 22 years old" also under the jurisdiction of the BSEA under MGL c. 71B. Hearing Officer is also defined in 456 CMR 11.07 as "the term hearing officer shall mean the Board member or DLR agent designated to preside at a hearing." The implementing regulations of 456 CMR 18.00 are "emergency regulations" which is entirely discretionary without any definitions.

Defendant Pentucket Regional School Committee is a "legislative body" and an agency for the state, otherwise defined as a "State Educational Agency" of the Commonwealth of Massachusetts. Beginning June 13, 2006 and for all relevant times until October 29, 2013 the Pentucket Regional School District was controlled by a 5-person finance control board consisting of the Secretary of Administration and Finance or his designee, the Commissioner of Revenue or his designee, the Deputy Commissioner of the Division of Local Services of Revenue or his designee, the Deputy Commissioner of Education or his designee, and the Chairman of the Regional School Committee or his designee. Until the board ceases to exist, no appropriation, borrowing authorization or transfer shall take effect until approved by the board. The board shall have full authority to waive any reporting or filing requirements contained in this section.

6.      Defendant Department of Elementary and Education is a State Agency of the Commonwealth. They are responsible for protecting, serving and supporting the school districts.

7.      Defendant Board of Education is a "local education agency" which has administrative control and direction of a vocational education program funded in whole or in part by federal funds. They are responsible for providing the funding for special education pursuant to the rules and regulations of the Department of Revenue.

8.)     The Bureau of Special Education Appeals ("BSEA") is a state agency and subdivision of the Division of Administrative Law Appeals ("DALA") within the Division of Local Services of the Department of Revenue, a State Agency. Bureau of Special Education Appeals Hearing Officers are employees of the State of Massachusetts, and members of a collective bargaining unit.

9.)     Defendant Commonwealth of Massachusetts is a "State" which receives federal grants for use consistent with IDEA, 504 and Medicaid for Ch. 766 (MGL C. 71B) the purpose of implementing laws and regulations consistent with the federal statutory regulations and purpose.

## IV FACTUAL ALLEGATIONS

### No Notice of Procedural Safeguards Meeting Content Criteria of IDEA

10.)    Michelle has in her possession every notice of Procedural Safeguards provided to her by either Pentucket or the BSEA since the very first one in November 2003. Michelle alleges that none of these meet the criteria for content required by the IDEA and that based on this lack of notice, the defendants effectively denied all due process rights under IDEA entirely by depriving Michelle and others of the "Notice" required so that she had no way of knowing even what her or her children's legal rights were or how to maneuver through the maze of Massachusetts special laws and outside sections to determine who was responsible for what, when, where and how. As a result, Michelle first discovered what the actual procedural safeguard notice content was supposed to be in July 2014. Michelle alleges that this is a policy intended to deprive due process and that she and her children were harmed by withholding this notice of actual notice of parents' rights to procedural safeguards pursuant to Subpart E since her children began school in 2000, 15 years ago. (Emphasis supplied).

### Fraud - Unofficial Regulations Materially Differ from Official Regulations

11.)    During the course of 1-13-cv-11414-DPW proceedings before this court, Michelle received the regulations for 603 CMR 28.02 Definitions as an exhibit from the Commonwealth of Massachusetts (or the BSEA) and noticed a material difference

between that and the regulations posted on the Mass.gov Website that she had been relying on since 2006, specifically, there are no numbers in parenthesis next to the terms under Definitions in the version submitted to this court so the definition of disability is not 603 CMR 28.02(7), as it is on the website.

12.)      Michelle noticed that on the Mass.gov Official Website at the bottom of the page there is a note which says these are not the official version of the regulations, which are available at the state bookstore. Michelle went to the state bookstore in October 2014 and obtained the Official Regulations and confirmed that there is no such thing as 603 CMR 28.02(7). Consequently, referring to the Official 603 CMR 28.05(2) (a) "Eligibility Determination" where it states "The Team shall examine the evaluative data, including information provided by the parent, and make one of the following determinations: "If the student has one or more of the disabilities defined at **603 CMR 28.02(7)"** (Emphasis added).

13.)      For comparison purposes Michelle went back to the State House and obtained the prior version of official regulations 603 CMR 28.02 (from 09/01/00) and found this to have very similar inconsistencies. In that version 603 CMR 28.05 (2)(a)(1)(a) Eligibility Determination it says "Consistent with state and federal special education law, the Team shall find whether a student has a disability(ies) as defined in **603 CMR 28.08(6)**." The regulation for the definition of term "Disability" is the sixth term defined under 28.02 Definitions, which also has <u>no numbers in parenthesis</u>. (Emphasis added.) See *Royce v. Commissioner of Correction,* 390 Mass. 425, 427 (1983) ("Once an agency has seen fit to promulgate regulations, it must comply with those regulations."); *Town of Northbridge v. Town of Natick,* 394 Mass. 70, 76 (1985) ("An agency must follow its own regulations

even in the face of inconsistent internal guidelines."). According to the regulations,

there was no possible way that my children (or anyone else's) could be found eligible at

an eligibility meeting since at least the year 2000. (Emphasis Supplied).

**Unconstitutionality of State Statutes & in Conflict with IDEA & 504**

14.) MGL c. 71B §2A enacted in July 2010 by Chapter 131 of the Acts of 2010

"Transfer Legislation" includes many sections, in addition to the cited section 53, and the

MOU therein referenced allows the 'bureau of special education appeals and hearing

officers complete discretion to resolve disputes "without limitation" pursuant to a

Memorandum of Understanding between the BSEA, DALA and the Department of

Elementary and Secondary Education (MDESE) limits the rights of Plaintiffs without due

process notice and in violation of federal statutes which the state receives grants

explicitly for the purpose of providing these rights and entitlements.

**Hearing Officers are State Employees & Members of Collective Bargaining Units in Violation of IDEA**

15.) In a letter from the United States Department of Education Office of Special

Education and Rehabilitative Services dated January 15, 2009 to Mitchell D. Chester,

Ed.D. Commissioner of Education, Massachusetts Department of Elementary and

Secondary Education, Tracy R. Justesen wrote in response to his letter to Margaret

Spellings, dated October 7, 2008, where he indicated that special education hearing

officers and mediators are not only employees of the Bureau of Special Education

Appeals within the Massachusetts Department of Elementary and Secondary Education

(MASSDE), but that they are also members of a collective bargaining unit and report to

an administrator of MASSDE. She goes on to say that the IDEA continues to have an

unambiguous requirement that SEA employees not serve as mediators or hearing officers. The current regulations for Part B of the IDEA prohibit an employee of the SEA or an LEA involved in the education or care of the child from being a hearing officer. 34 CFR §300.511(C)(1)(i)(a)[3], provides that at a minimum, a hearing officer may not be an employee of the SEA or the LEA that is involved in the education. See also 34 CFR§506(c)(1)(i), prohibiting an employee of the SEA or the LEA that is involved in the education or care of the child from being an impartial mediator. Additionally, hearing officers and mediators may not have a personal or professional interest that would conflict with the person's objectivity in the hearing or mediation. 34 §CFR300.511(c)(1)(i)(B) and 34 CFR§300.506(c)(1)(ii).

16.)      In response to this letter, Massachusetts enacted what is referred to "The Transfer Legislation", St.2010, c. 131, § 53, eff. July 1, 2010 implementing MGL c71B § 2A states that hearing officers "shall be knowledgeable and experienced attorneys who meet the qualifications and criteria set forth in *34 C.F.R. section 300.511(c)*[4] and any other regulations or *applicable*[5] provisions of the Individuals with Disabilities Education Act and the board of elementary and secondary education regulations". The significance appears to be the difference between omitting all criteria after (c).

17.)      Hearing officers at the BSEA have a very long tenure in their jobs as collective bargaining agents, as reported by **Massachusetts Special Education Reporter** ("MSER") published by Landlaw Legal Publishers which provides the names of all the BSEA Hearing Officers and Mediators and the year they were appointed. Lindsay

---

[3] 34 CFR §300.511(C) Impartial hearing officer. (1)  At a minimum, a hearing officer --(i) Must not be--(A) An employee of the SEA or the LEA that is involved in the education or the care of the child; or (B) A person having a personal or professional interest that conflicts with the person's objectivity in the hearing…"
[4] 34 §CFR300.511(c) Impartial hearing officer. (i.e. MGL c. 71B § 2A omits all remaining criteria).
[5] Applicable appears to be construed as discretionary based on the statute as a whole

Byrne, the hearing officer in BSEA #1409900 has been an employee since 1984. Rosa Figueroa, the hearing officer in BSEA #12-8636 and #12-8636R has been an employee since 1993. Catherine Putney-Yaceshyn, the Hearing Officer in BSEA #07-7868 and 08-0198, and has been an employee since 2000 and Sara Berman who was the Hearing officer in BSEA 10-6783 and 11-0931 has been an employee since 2001. William Crane, who was the Hearing Officer in BSEA 12-9569 and was employed in 1999 in that role and is now working at the Massachusetts Advocates for Children.

18.)    Plaintiff Michelle has had every one of these hearing officers[6] and another named Joan Beron in BSEA 07-1116, which was the first one which was filed by Pentucket Public Schools against Christopher Keating, Hearing Notice is dated September 8, 2006 which is the first week of the school year the Finance Control Board was in charge. Every one of these cases prior to 2012 was regarding Christopher Keating who was identified by his teacher and the school's evaluator in the first grade as needing a language based program due to the significant disparity between his verbal comprehension being in the 96% (gifted range) and  performance scale at 34%.

19.)    Pursuant to Section 174 of Chapter 131 of the Acts of 2010, BSEA Hearing Officers are still employees and members of a collective bargaining unit and the hearing officer is not impartial and pursuant to Section 175 of Chapter 131 of the Acts of 2010, a Special Education Advisory Committee is apparently involved in making the decisions before it's issued.[7]

---

[6] There are only two other hearing officers at the BSEA (Raymond Oliver, 1979 and Ann Scannell 2009) although they did just hire a replacement for William Crane.

[7] SECTION 174. (a) Notwithstanding any general or special law to the contrary, the dispute resolution functions of the bureau of special education appeals, which was established as an independent entity by the department of elementary and secondary education within the executive office of education, its employees, proceedings, rules and regulations and legal obligations are hereby transferred to the division of administrative law appeals, established in section 4H of chapter 7 of the General Laws.

20.)      This Massachusetts Special Education Reporter is a very interesting publisher

because they're commentators, the law firms of Kotin, Crabtree & Strong and Stoneman,

---

(b) Those employees of the department of elementary and secondary education covered by a collective bargaining agreement who, before the effective date of this act, were assigned to the bureau of special education appeals, including those who immediately before the effective date of this act hold permanent appointment in positions classified under chapter 31 of the General Laws or who have tenure in their positions as provided by section 9 A of chapter 30 of the General Laws, are hereby transferred to the division of administrative law appeals without interruption of service within the meaning of said section 9A of said chapter 30, without impairment of seniority, retirement or other rights of the employees and without reduction in compensation or salary grade and without loss of accrued rights to holidays, sick leave, vacation and other benefits and without change in union representation, if any, or certified collective bargaining unit as certified by the state labor relations commission or in local union representation or affiliation. Any collective bargaining agreement in effect immediately before the transfer date shall continue in effect and the terms and conditions of employment therein shall continue as if the employees had not been so transferred. The reorganization shall not impair the civil service status of any such reassigned employee who immediately before the effective date of this act either holds a permanent appointment in a position classified under said chapter 31 or has tenure in a position by reason of said section 9A of said chapter 30. **Notwithstanding any general or special law to the contrary, all employees assigned to the bureau of special education appeals covered by collective bargaining agreements shall continue to retain their right to collectively bargain pursuant to chapter 150E of the General Laws and shall be considered employees for the purposes of said chapter 150E.** Nothing in this section shall confer upon an employee any right not held immediately before the date of this transfer or prohibit any reduction of salary grade, transfer, reassignment, suspension, discharge, layoff or abolition of position not prohibited before the transfer date.

c) The assistant director of special education appeals is hereby transferred to the division of administrative law appeals as the initial director of the bureau of special education appeals without interruption of service within the meaning of section 9A of chapter 30 of the General Laws, without impairment of seniority, retirement or other rights of the employee and without reduction in compensation or salary grade and without loss of accrued rights to holidays, sick leave, vacation and other benefits. **The reorganization shall not impair any civil service status of such reassigned employee who immediately before the effective date of this act either holds a permanent appointment in a position classified under chapter 31 of the General Laws or has tenure in a position by reason of said section 9A of said chapter 30.**

(d) All petitions, requests, hearings and other proceedings appropriately and duly brought before the bureau of special education appeals and pending before it before the effective date of this act shall continue unabated and remain in force, but shall be assumed and completed by the bureau of special education appeals as part of the division of administrative law appeals.

(e) All orders issued by the bureau of special education appeals that are in force immediately before the effective date of this act shall continue in full force and effect in accordance with the terms of such orders.

(f) All rules and regulations governing the bureau of special education appeals which are in force immediately before the effective date of this act shall continue in full force and effect until superseded, revised, rescinded or canceled by the board of elementary and secondary education, in consultation with the director of special education appeals and the chief administrative magistrate of the division of administrative law appeals.

SECTION 175. The special education appeals advisory council established in section 2 A of chapter 71B of the General Laws shall hold its first meeting not later than 45 days after the effective date of this act and shall include in its duties advice and feedback relating to the bureau of special education appeals' transition to the division of administrative law appeals.

Chandler & Miller report on the decisions even before the decisions are issued. In Christopher K. v. Pentucket Public Schools BSEA 10-6783/11-0931 Kotin Crabtree and Strong posted the decision on their public website on January 3, 2011 a full week before the decision was actually issued on January 10, 2011. Coincidentally, in Re: CBDE Public Schools (BSEA 10-6854) was also published on website on January 3, 2011 almost two full months before that decision was issued on February 24, 2011. (See CBDE Public Schools v. Massachusetts Bureau of Special Education, 2012 U.S. Dist. LEXIS 139060).

**Division of Administrative Law Appeals**

21.)         The Division of Administrative Law Appeals is within the **Division of Local Services Educational Programs** and established by section 4H of chapter 7 of the General Laws; provides that the division shall maintain, to the fullest extent practicable, a complete physical and technological separation from any agency, department, board, commission or program the decisions, determinations or actions of which may be appealed to it; and provided further, that every decision issued by a commissioner or other head of an agency, or a designee, following the issuance of a **recommended decision** by an administrative law judge of the division, shall be an agency decision **subject to judicial review under chapter 30A** of the General Laws. However the notice of rights of Appeal provided with the decisions in BSEA 12-8636 and BSEA 10-6783/11-0931 Notice stated under "Rights of Appeal" "Any party aggrieved by a decision of the Bureau of Special Education Appeals may file a complaint in state superior court or in the District Court of the United States for Massachusetts, for review

of the Bureau[8] decision.  20 U.S.C.s. 1415(i)(2).  An appeal of a Bureau decision to state

superior court or to federal district court must be filed within ninety (90) days from the

date of the decision.  20 U.S.C.s. 1415(i)(2)(B)."


**Violation of Rights in BSEA 1409900**

22.)      This discretion has been evident during the course of BSEA 1409900 where

Plaintiff's notified the hearing officer Lyndsay Byrnes that she had acted administratively

on behalf of mediator twice during the original dispute over the finding of no eligibility

in 2011 and 2012 before the hearing request of BSEA 12-8636.  The Hearing Officer

responded by informing Michelle that she was not a Party in that matter. This is beside

the point since Alicia was the real person of interest in all four matters.

23.)      During the course of this proceeding the Hearing Officer issued an order stating

that she has the authority to change the rules of the hearing sua sponte at any time.

24.)      During this same BSEA 1409900 proceeding, Pentucket's Counsel objected to the

possibility of the hearing officer applying federal statutory law under IDEA for an

"ineligible" student who graduated.

25.)      During the same BSEA 1409900 the Hearing Officer held a pre-hearing

conference on July 22, 2014 and subsequently issued an "Order to Amend Hearing

Request" which was on July 25, 2014 where two years had passed since student turned

18.  Student Objected.

26.)      Recently Pentucket Counsel notified the Hearing Officer that her client doesn't

understand the issue.  Next, the Hearing Officer used her unlimited discretion and issued

an Order taking the hearing "off calendar" so that the BSEA 12-8636R could proceed

---

[8] Note that the decision is by the Bureau and not by the Hearing Officer.  Also "Appeal" is inconsistent with IDEA.

first to determine student's eligibility before determining whether the rights of students were affected by the Principals refusal to sign the form authorizing Alicia to delegate her authority to her Mother which Plaintiff's had believed violated Alicia's right to FAPE, but in light of the fact that the eligibility team was not authorized to find student eligible in the first place, the Hearing Officer's rationale makes some sense if there were no rights to violate.

**Pentucket Public Schools (aka Pentucket Regional School District)**

27.)     Plaintiffs have since discovered that Massachusetts Chapter 108, of the Acts of June 13, 2006 "An Act Regulating the Financial Conditions in the Pentucket Regional School District" subjected the district and its committee to approval of the finance regulatory which was comprised of Secretary of Administration and Finance or his designee, the Commissioner of Revenue or his designee, the Deputy Commissioner of the Division of Local Services of Revenue or his designee, the Deputy Commissioner of Education or his designee, and the Chairman of the Regional School Committee or his designee. Until the board ceases to exist, no appropriation, borrowing authorization or transfer shall take effect until approved by the board. Based on this knowledge, it now appears that Pentucket Regional School District was not authorized to make any decisions of a financial nature and that Pentucket Regional School Committee was not authorized to make decisions without the approval of the Finance Board and the Commission of Revenue or the Joint Legislature of Massachusetts during the relevant time periods prior to October 29, 2013.

28.)     It appears that Pentucket Regional School District is now being held responsible for actions occurring during that period to which are claiming were not caused by them,

which is the same thing Michelle asserted in 1:13-cv-11414-DPW. However Pentucket

may be prohibited from pursing a remedy other than through the collective bargaining

agreement, which appears to occur parallel to the BSEA proceedings involving Plaintiffs.

So while the agreement was between Pentucket and Michelle, and not the BSEA or any

other agency, the term "Massachusetts Law" appears to be the most ambiguous term in

the agreement.


### Arbitrary and Capricious Violations of Rights in BSEA 12-8636R

29.)       The original BSEA 12-8636 was requested solely pursuant to the IDEA, 504 and

ADA. Yet the Hearing Notice for BSEA 12-8636R was issued identical to every other

Hearing Notice issued by the BSEA to Parent since 2006. It is held "pursuant to MGL

Chapter 30A, and 71B, 20 USC 1401 et. seq. and the Rehabilitation Act of 1973, 29 USC

794. There is no mention of the statutes the hearing was requested pursuant to, or the

statutes indicated by Judge Woodlock in the remand decision. It is evident that no matter

what the claims, or who the parties, the hearing notice always says "To All Interested

Parties".[9] This is arbitrary and capricious. Therefore the agency responsible for

providing the administrative exhaustion of those claims should be pre-empted by the

federal statues from applying state laws, regulations, procedures, policies, guidelines and

discretion that do not comply with IDEA and 504. However, it has been the policy of the

BSEA and Pentucket to routinely use Subpoena Duces Tecum in this matter and in the

separate matters of BSEA 10-6783/11-0931 where Michelle Keating was acting on

behalf of her then minor son Christopher Keating. These Subpoena Duces Tecum are

---

[9] A foolish consistency is the hobgoblin of little minds adored by little statesmen and philosophers and divines." —
Ralph Waldo Emerson (see Town of Burlington v. Dept. of Educ., Com. of Mass., 736 F. 2d 773 - Court of Appeals,
1st Circuit 1984, footnote 33)

issued by the Pentucket School District allegedly on behalf of the BSEA upon non-parties including student's psychologist and her colleges without any accompanying court order, without any advance and demand copies of confidential medical, psychological, personal emails, etc. be sent in advance of the hearing date directly to the defendant's counsel's offices for a fishing expedition. Aside from being irrelevant since the hearing is for a period of time preceding student's college attendance, it is Plantiff's personal information that they have no right to obtain for an IDEA hearing about procedural violations and substantial claims of violations of the school district. Plaintiffs' are not criminals but it appears they are being investigated as such.

30.)  Students private psychologist's keeper of the records informed Plaintiff's that this is "routine" and "according to law" they've been assured by many competent special education attorneys. Both Pentucket and the BSEA have also served Students' father to appear at the Hearing, whom has not had any legal authority to make educational or medical decisions since October 2006, a fact that both Pentucket and the BSEA were notified of at the time and since. No new claims have been made against Pentucket pursuant to IDEA for any period after July 27, 2012; and all of this has been done without regard for any protection of confidential information of Student or Parent. This was allegedly authorized by State Law MGL c30A, Sections 2 and 12.

31.)  Michelle filed a Motion to Stay Case so that she and Alicia could file a motion for a Preliminary Injunction with this court to protect the order by Judge Woodlock and the rights of Plaintiffs. An employee of the BSEA left a voice message relaying that the Hearing Officer denied the Motion to Stay.

**Law of the Case 1:13-cv-11414-DPW All-Writs Act (AWA), 28 U.S.C. § 1651(a)**

32.)     In the remand, BSEA 12-8636R, Pentucket asserts on March 23, 2015 that Parent is not a

Party despite fact that Alicia was joined not substituted by Judge Woodlock.  Since the costs

of Alicia attending Landmark College since the termination of her program without due

process have fallen on Michelle primarily, as well as Alicia in the form of Student Loans and

other costs, it would be futile for Michelle to participate in a hearing at the BSEA that she is

not a Party to without any possibility of receiving an equitable remedy.

33.)     During the conference call, BSEA's hearing officer Rosa Figueroa did not rule on

whether Michelle is a Party, and further stated that she didn't understand that we were still

seeking to toll the statute of limitations, then discussed a few other discrepancies over the

issues, both conceding that she made an error in not allowing the Plaintiff's to amend the

complaint pursuant to their letter dated December 20, 2012 but then saying she wasn't sure if

Alicia's issues went back to May 2012 (as asserted by Attorney Spector when she was

arguing on behalf of the Commonwealth of Massachusetts at June 4, 2014 hearing) or to July

25, 2012 or to December 20, 2012.

34.)     Despite all of these outstanding questions, the hearing officer ignored them all and issued

an order dated March 26, 2015 "A Hearing regarding the **scope of the hearing and the

contract issue** will be held on Friday May 1, 2015 at 10:00am at the offices of

DALA/BSEA".  Since there is no "contract issue" in the hearing request or the remand

instructions and the "scope of hearing" was defined by the Memorandum of Law by Judge

Woodlock, it appears the BSEA or Pentucket or another state agency is attempting to litigate

an issue that was not only not in the scope of the hearing request but which they are both

judicially and collaterally estopped from doing.  In this same order, "the hearing officer

DENIED Parent's/Student's Motion to Quash subpoena's received on March 23, 2013, to

which Pentucket Objected on March 24, 2015) without any explanation or findings whatsoever. (See Gibson v Berryhill, 411 U.S. 564 (1973).

35.) The defendants are judicially and collaterally estopped having waived their opportunity to file a counterclaim during the course of 1-13-cv-11414-DPW. Not only did they not appeal, they never even answered. This was **not** dismissed, just closed in order to send back to the BSEA for administrative exhaustion. Judge Woodlock issued a final order as to the judicial review claim, the defendants should be bound by the decision which was determined de novo that the language was ambiguous and Michelle reasonably believed the term "her BSEA case" was regarding her own bifurcated case of IEE reimbursement.

36.) The BSEA has a custom or policy of "bi-furcating" claims to reposition it into an order that suits the state's needs which is diametrically opposed to the purpose of IDEA which is to provide procedural safeguards to ensure parents and students rights to a free and appropriate public education. There is nothing impartial about the BSEA or it's hearing officers. It's not their fault personally, they are legally mandated to do this by Massachusetts Law, but after more than 10 years, now knowing this was all done intentionally to deprive parent and students of their rights, it would be cruel and unusual punishment for parent and student to endure a futile effort any longer, especially where it is evident that they are not entitled to a hearing at the BSEA, the process is considered to be "voluntary" on their part by Ch. 71B.

**The Department of Revenue**

37.) Shortly after the order to remand was issued by Judge Woodlock, Pentucket's counsel Paige Tobin informed Michelle and Alicia that there were only two ways that they could resolve the issue, one is by entering into another settlement agreement and the other was to go to hearing. Michelle and Alicia indicated they were not willing to enter

into a settlement agreement based upon the circumstances. Pentucket's counsel indicated

it had no voluntary way to resolve our dispute. This fact appears to harm Pentucket too.

38.) The following week Michelle received an envelope titled "Important Town

Census" from the town clerk in Groveland which states "Warning: Failure to response to

this mailing shall result in removal from the active voting list and may result in removal

from the voter registration rolls. (M.G.L. Chapter 51, Section 4). This is something I

have received before but never paid much attention to and never saved a copy, however

this one lists "Landmark" as the "occupation" next to both Alicia and Christopher's

name. The instructions on the back state explicitly to enter occupation and NOT place of

employment. I would have only listed them as "student" and in fact did enter "student"

and returned the original document because the "Special Instructions" say "Return

IMMEDIATELY. COMPLIANCE with this State requirement provides proof of

residency to protect voting rights, veteran's bonus, housing for the elderly and related

benefits as well as providing information for selection of jurors. This form DOES NOT

register you as a voter." Under pains and penalties of perjury, Michelle wrote in

"student" next to both names.

39.) The following week Michelle received an email from Landmark School regarding

Christopher's program next year, notifying her that this year for the first time, Parents of

students who are publicly funded will have to sign an enrollment contract with

Landmark. This was due the day before Christopher's 18th birthday. Due to the

unknown legal ramification of signing the enrollment contract, Michelle notified

Landmark that she was not able to sign it and that requiring her to sign it constituted a

change in placement where she had not had to sign an enrollment agreement during the

three prior years as the contract was between Pentucket and Landmark. Michelle

believes that Landmark is required to comply with the State and this is being forced in

retaliation for Michelle's involvement in Alicia's case, terminating Christopher's

placement at Landmark would be devastating and inflict irreparable harm.

40.)        Plaintiffs are left without any possible way to administratively exhaust their

claims pursuant to IDEA (impartial hearing officer and the legally mandated procedural

safeguards). Given the circumstances, they should be excused because it would be a

waste of resources for everyone involved and it has been 3 years since this case was filed

with the BSEA and its no closer to resolution than it was then. The regulations pursuant

to MGL Ch. 71B only provide for reimbursement to school committees and towns.

There is no regulation or law in force in Massachusetts that allows for a voluntary

remedy, only by appropriation and then only by waiver of rights, with risk to being

subject to undisclosed special laws it is just not a reasonable solution for Plaintiffs. The

Department of Revenue's Regulations 830 CMR 40S.1.1: Smart Growth School Cost

Reimbursement Procedures which also has an "eligible student" definition as follow:

"Eligible student, a child living in a new smart growth development who is enrolled as of

October 1 in a public school in kindergarten through grade 12, attends a private school

pursuant to special education requirements, or is enrolled in a prekindergarten or post 12

grade program pursuant to special education requirements." And "Prior fiscal year, the

fiscal year before a smart growth school cost reimbursements payable to the

municipality." There is apparently no regulation that allows the Department of Revenue

to reimburse the parent or student or "resident" directly. Therefore the only possible

alternative is to obtain an order from a court with competent jurisdiction (i.e. Federal).

41.)    Plaintiff's will be irreparably harmed by further delay and further proceedings at

the BSEA. Financially, Michelle does not have the means to fund either or both Special

Education programs for 2015/2016 school year. Michelle's home is literally falling apart

due to neglect since purchasing it in 2006 because all of her resources (time and money),

have been diverted to the needs of her children which were the obligation of the

defendants, and her income has been significantly reduced as a result. Michelle's car is

one repair away from needing to be replaced and her mechanic told her to replace vehicle

last year. Michelle has withdrawn retirement funds prematurely to meet the costs of

Landmark School, Landmark College, and medical bills resulting from the gross

negligence, bad faith and fraud of the defendants. Defendants have no justification for

delaying reimbursements any further and it would not cause any irreparable harm to the

Commonwealth of Massachusetts who has been receiving federal grants services they

have not provided. It is in the public interest that they be held accountable.


## VIII.  CAUSES OF ACTION

### COUNT I

THERE IS NO IMPARTIAL HEARING OR PROCEDURAL SAFEGUARDS PURSUANT TO
IDEA ARE AVAILABLE IN THE STATE OF MASSACHUSETS TO ADMINISTRATIVELY
EXHAUST PLAINTIFFS' CLAIMS AND THEY SHOULD BE EXEMPT.


### COUNT II

THE DEFENDANTS HAVE CREATED POLICIES, LAWS, REGULATIONS, RULES,
PROCEDURES AND GUIDELINES UNDER THE COLOR OF LAW IN BAD FAITH

PURUSANT TO THE EQUAL PROTECTION CLAUSE AND SECTION 1983 AGAINST

STUDENTS WITH SPECIFIC LEARNING DISABILTIES & THEIR PARENTS

## COUNT III

THE DEFENDANTS HAVE BEEN DELIBERATELY INDIFFERENT TO STUDENTS AND

THEIR PARENTS ON THE BASIS OF THEIR DISABILITIES AND IN VIOLATION OF

THEIR RIGHTS UNDER IDEA, SECTION 504 OF THE REHABILITATION ACT, ADA, and

the 4TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

## COUNT IV

THE DEFENDANTS HAVE ACTED FRAUDULENTLY WITH INTENT TO DECIEVE BY

POSTING "UNOFFICIAL" REGULATIONS ONLINE WHICH HAS BEEN RELIED UPON

BY THE PUBLIC AND CITED IN MANY INDUSTRY REPORTS

## COUNT V

THE DEFENDANTS ARE ABUSING THE LEGAL PROCESS BY MISREPRESENTNG

THEMSELVE'S AS A LEGITATE ADJUDICATORY AGENCY RATHER THAN A

COLLECTIVE BARGAINING UNIT AND WITH INTENT TO INTERFERE WITH JUDGE

WOODLOCKS' JURISIDICTION OF THE LAW OF THE CASE

## COUNT VI:

DEFENDANTS HAVE DELIBERATELY CAUSED IRREPARABLE DAMAGE TO

PLAINTIFFS K-12 EDUCATIONAL OPPORTUNITIES, INTERFERERED WITH

PLAINTIFF'S EMPLOYMENT AND EARNINGS POTENTIAL, CAUSED LOSS OF MORE

THAN 10 YEARS OF PLAINTIFF'S TIME ON A FUTILE PREDETERMINED OUTCOME,

CAUSING SIGNFICANT EMOTIONAL DURESS OVER THAT TIME

## VI.   **PRAYER FOR RELIEF**

Wherefore Plaintiffs ask this Court to:

1.  Declaratory relief exempting Plaintiff's from administrative exhaustion of claims at the Bureau of Special Education Appeals ("BSEA") as the pursuit of administrative remedies would be futile, a waste of resources and work severe and irreparable harm on the litigants as material information that was not known to Plaintiffs until a few months ago.  This information raises questions of law which directly affect the viability of having a hearing at the BSEA and which the BSEA does not have authority to hear or decide.

2.  Preliminary Injunction pursuant to the All Writs Act and Federal Rule of Civil Procedure 65 enjoining the defendants from proceeding with any action at allto protect the decision of Judge Woodlock and the rights of the plaintiffs until a final judgment has been entered by the Court in this matter.

3.  Review of Administrative Records in all related BSEA cases of Plaintiff's determined not to be moot based upon finding they were not decided by impartial hearing officers and should not evade review, for purpose of determining compensatory and equitable remedy pursuant to a Federal Question, [28 USC § 1331] and the Civil Action for Deprivation of Rights Under Color of Law [42 USC § 1983]

4. Plaintiffs ask that this court receive additional evidence, including but not limited to the administrative records of BSEA 12-8636R and BSEA 14-09900 for the purpose of preventing the defendants from re-litigating issues that were already decided in 13-cv-11414-DPW by Judge Woodlock in his Memorandum and Order dated January 16, 2015 and which they are judicially and collaterally estopped from doing.

5. Plaintiffs seek a declaration that in the administrative hearing requested solely pursuant to the IDEA, 504 and ADA, (BSEA 12-8636R) the agency responsible for providing the administrative exhaustion of those claims are pre-empted by Federal Law from using state laws, regulations, procedures, policies, guidelines and discretion that do not comply with Federal Statutory and Common Law, such as in this case where the routine use Subpoena Duces Tecum and whether State Law MGL c30A, Sections 2 and 12 are applicable to IDEA, 504/ADA hearings.

6. Plaintiff seeks declaration that Federal Law of Privilege (Rule 501) applies in administrative BSEA 12-8636R as requested solely pursuant to Federal Statute.

7. Plaintiff seeks declaration that based upon the federal statutory law in accordance with IDEA, the BSEA hearing officers are employees of the state and are not impartial as is evidence from the Memorandum of Understanding referenced in MGLc71B §2A and Section 174 and 175 of Chapter 131 of the Acts of 2010.

8. Plaintiff seeks declaration that Pentucket was not acting as a local education agency but as a state agency who was subject to IDEA & 504 but not subject to the BSEA jurisdiction during any time between June 13, 2006 and October 29, 2013 thereby violating the Plaintiff's due process rights by bad faith, needlessly

multiplying the proceedings and causing harm to students by being deliberately indifferent to their rights.

9. Declaratory relief that the unofficial regulations 603 CMR 28.00 et. seq. posted on the Department of Elementary and Secondary Education's official Mass.gov website, which are substantially different from the official regulations available at the Massachusetts State Bookstore constitutes a fraud.

10. Plaintiffs seeks a declaration that all Parent's Notice of Procedural Safeguards provided to Parent (printed 2000, 2002, 2005, 2008, 2009) and Student (2009) do not meet the notice requirements of the IDEA for content and constitutes a violation of procedural safeguards which interfered with the provision of a Free and Appropriate Public Education ("FAPE").

11. Plaintiffs seek a declaration that Massachusetts General Law Chapter 71B, Section 2A and the memorandum of understanding therein referenced enacted July 1, 2010 is unconstitutional whereas the BSEA hearing officers and/or Director is authorized to decide which statutes, rules, regulations, policies, will apply rather than being dictated by the procedural safeguards mandated by federal statute for which the hearing was requested and the hearing officers have discretion to change the rules with or without notice to Plaintiffs.

12. Plaintiffs seek a declaration that the policies, customs, rules, laws, and procedures as applied in these related cases caused a denial of FAPE and that Plaintiffs are entitled to reimbursement of all special education and related costs including (for Michelle) reimbursement for taxes and early withdrawal penalties from having to take funds from her retirement accounts to fund the interim special education

placement for Alicia Keating at Landmark College for 2012-2013 & 2013-2014 school year as well as prospective funding for 2015/2016 as Alicia will be returning to Landmark College in September 2015 due to unexpectedly encountered learning obstacles at the University of Massachusetts, primarily lack of instruction by universal design principals in the curriculum caused Alicia to have to drop a class this semester (from 3 to 2) because she needs so much time obtaining alternative instruction via the internet or through tutors and peer.

13. Declaratory Relief that Alicia was a Student with a Disability as Defined by the IDEA and requires additional compensatory special education and accommodations, justifying stay put throughout the duration of the hearing process or until such time as Alicia is able to progress at the same pace of instruction with fulltime course load as UMass college requires;

14. Set aside any conveyance that is fraudulent or coerced including the settlement agreement;

15. Join any necessary Parties;

16. Order a Jury Trial, and award compensable, equitable, and punitive damages and all other relief that the Court deems reasonable and just.

Respectfully Submitted,

By:

Michelle Keating, Pro Se
4 Parker Road
Groveland, Ma 01834
978-46991887

Date:

By: *alicia Keating*

Alicia Keating, Pro Se
4 Parker Road
Groveland, Ma 01834
978-469-1887

Date: *May 1 2015*